**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **David L. Lisy**<br>**36225 Detroit Road**<br>**Suite 214**<br>**Avon, Ohio 44011**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**Cuyahoga County, Ohio**<br>**2079 E. 9th Street, 8th Floor**<br>**Cleveland, Ohio 44115**<br><br>**and**<br><br>**Cuyahoga County Sheriff's Department**<br>**1215 West 3rd Street**<br>**Cleveland, Ohio 44113**<br><br>**Defendants.** | **)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)** | **CASE NO.**<br><br><br>**JUDGE**<br><br><br><br><br><br><br><br><br><br>**(Type: Other Civil; Employment Discrimination; Title VII; Jury Demand Endorsed Hereon)** |

Plaintiff, David L. Lisy for his several causes of action and claim for relief against Defendants, jointly and severally, avers, as of all times pertinent, the following matters and things.

**1.** Plaintiff David L. Lisy is male of mixed-race (African-American, Native American and Caucasian) and was and is a resident of the above address and has been employed by the above-named Defendants since July 31, 2006.

**2.** Mr. Lisy was initially employed as Sheriff's Deputy in the Cuyahoga County Sheriff's Department. In September 2013 he was promoted to the rank of Sergeant, the rank he currently holds.

**3.** Defendant Cuyahoga County, Ohio is a political subdivision of the State of Ohio. Defendant Cuyahoga County Sheriff's Department is a department of Cuyahoga

County. Defendants Cuyahoga County and Cuyahoga County Sheriff's Department are collectively referred to as "Defendants" or the "County".

**4.** Defendants are an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, *et seq.* ("Title VII").

**5.** At all times relevant hereto, Defendants employed and/or employ more than 15 employees so as to be covered by and subject to Title VII.

**6.** This Court has jurisdiction over Mr. Lisy's Title VII race and color based hostile work environment claims by virtue of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, *et seq.*

**7.** This Court has jurisdiction over Mr. Lisy's retaliation claims by virtue of 42 U.S.C. 42 U.S.C. §2000e-3.

**8.** Venue is proper in this Court as the actions that give rise to Plaintiff's cause of action arose in the Northern District of Ohio.

**9.** This Court has pendent, supplemental, and/or ancillary jurisdiction over Sgt. Lisy's Ohio statutory and common-law claims by virtue of 28 U.S.C. §1367.

**Count I (Title VII Race and Color Discrimination)**

**10.** Plaintiff restates the allegations contained in the foregoing paragraphs of this Complaint as if fully restated herein.

**11.** Defendants created, fostered and condoned a pattern and practice of race and color based disparate treatment wherein employees are treated more favorably on the basis of their color and/or race.

**12.** At all relevant times, Sgt. Lisy was treated differently and less favorably than similarly situated employees not of his protected class statuses.

**13.** At all times relevant hereto, Defendants' actions and inactions permitted, fostered, and condoned a workplace wherein white employees were treated more favorably than black employees and employees of mixed race and/or black employees were treated more favorably than those of mixed race.

**14.** Defendants engaged in patterns and/or practices of employment discrimination and retaliation on account of Sgt. Lisy having engaged in activity protected under Title VII and the Ohio Revised Code Chapter 4112. .

**15.** Sheriff Pinkney harbors discriminatory and retaliatory animus toward Sgt. Lisy and has engaged in and continues to engage in a course of discriminatory and retaliatory conduct negatively impacting the terms and conditions of Sgt. Lisy's employment. The act and omissions of Defendants that constitute the discrimination and retaliation against Sgt. Lisy were and are continuing violations negatively affecting the terms and conditions of his employment.

**16.** On April 14, 2014 Sgt. Lisy filed an internal complaint with the Sheriff's Department in which he complained that he was removed from the HVEO detail that he had been assigned to since 2011 on account of his race. At the time he was the only black/mixed race deputy assigned to the High Visibility Enforcement Objective (HVEO) detail. His supervisor, Sergeant Campbell complained to Lt. Smith, the next level of supervision in the chain of command, about Sgt. Lisy's preparation of tour of duty reports were not uniform and were not comparable to Sgt. Campbell's. The reports of white deputies were not uniform and were not comparable to Sgt. Campbell's either, however they were not removed from the HVEO detail. WHioe assigned to the HVEO detail he was not afforded the same amount of overtime as the

white deputies. As a result of his removal from the HVEO, Sgt. Lisy was not eligible for the overtime afforded other member od the HVEO detail.

**17.** At one point prior to this time period, Mr. Lisy was assigned to the operations desk at the Cuyahoga County Justice Center. A Cleveland Clinic police officer brought in an intoxicated African American gentleman. Sgt. Campbell, who was supervising the operations desk stated "You gotta love a nigger that fucked up." Mr. Lisy was offended by the comment.

**18.** On May 28, 2014, after not receiving any resolution of his internal complaint, Mr. Lisy filed a charge of discrimination with the Cleveland Field Office of the United States Equal Employment Opportunity Commission, Charge No. 532-2014-01339 (hereinafter Charge 1.) The basis of the charge was the same as that raised in his internal complaint, that he was being treated differently than similarly situated employees, not of his protected class, on account of race/color (Black, American Indian, Biracial (Black and White)).

**19.** Sheriff Pinkney, who at the time Charge 1 was filed was Chief Pinkney, called Sgt. Lisy into his office, threw a copy Charge 1 across his desk toward Sgt. Lisy. He stated that Charge 1 would be denied because the Department had promoted Sgt. Lisy lieu of addressing the issues raised in Charge 1.

**20.** In January of 2015, while assigned as a supervisor in the Cuyahoga County Sheriff's Detective Bureau, Sgt. Lisy was assigned to supervise a Use of Deadly Force (UDF) investigation team involving the City of Cleveland Division of Police (CPD). Growing out of that investigation, Sgt. Lisy and a coworker began formulating what is now called the UDF Team, which grew to a team of thirteen (13) detectives (each

of whom had separate, full-time assignments throughout the Sheriff's Department). Sgt. Lisy was responsible for the supervision of investigations and facilitating the training for the UDF team members.

**21.** On August 25, 2015 the EEOC issued a Notice of Rights. Mr. Lisy elected not to bring an action at that time, although he was subjected to retaliation for having engaged in protected activity. He was subjected to disparate treatment in, inter alia, the assignment of duties, and access to opportunities to work overtime hours.

**22.** Defendants took no remedial action in response to either complaint.

**23.** Despite his complaints of disparate treatment and hostile work environment on account of his race/color and the acts of retaliation for his having engaged in activity protected under federal, state and local anti-discrimination laws, Defendants continued to engage in retaliatory conduct toward him.

**24.** In October 2015 Sgt. Lisy learned that two Sheriff's Deputies had contracted with a private detective agency to conduct a background investigation of Sgt. Lisy as a means to discredit him and undermine his authority as a supervisor. The detective agency is owned and operated by the brother of a Cuyahoga County Deputy Sheriff.

**25.** On January 14, 2016 Sgt. Lisy learned that these two Sheriff's Deputies met with Sheriff Pinkney to discuss the findings of the private investigation they had commissioned. The investigation revealed a sealed record that related to Sgt. Lisy. Sgt. Lisy was told that Sheriff Pinkney would most likely remove him from his supervisory position in the Detective Bureau because after Pinkney met with the two deputies; he determined that Sgt. Lisy could not be trusted. Rather than put an end to the two deputy's private investigation into Sgt. Lisy's past, Sheriff Pinkney further

fostered and condoned the hostile work environment that Sgt. Lisy had been subjected to and permitted his subordinates to engage in inappropriate, illegal conduct and harassment toward Sgt. Lisy in the workplace.

**26.** While he has also complained to his immediate chain of command, they did not and have authority or ability to correct the decisions made by Cuyahoga County Sheriff Clifford Pinkney.

**27.** The disparate treatment and retaliatory acts of Defendants became so intolerable that on January 19, 2016 Sgt. Lisy forwarded a confidential memorandum to Cuyahoga County Executive Armond Budish and the County Human Resources Director in which he outlined the hostile work environment that he had been and continued to be subjected to in retaliation to his filing of the internal complaint and Charge 1, as well as the continued race based discrimination.

**28.** On January 19, 2016 Sgt. Lisy met with the Cuyahoga County Compliance Manager and Cuyahoga County Human Resources to lodge a complaint that the Sheriff's Department, by the acts and omissions of Sheriff Pinkney had further created, fostered, and condoned a hostile work environment due to Sgt. Lisy's prior engagement in protected activity and his race and/or color.

**29.** On February 2, 2016 Sheriff Pinkney, after reviewing Mr. Lisy's yearly evaluation ordered Lieutenant Smith, Mr. Lisy's supervisor, to revisit the evaluation because Sgt. Lisy had received high ratings of 4 and 5 in each area of his evaluation.

**30.** On February 11, 2016 Sgt. Lisy learned that Sheriff Pinkney threatened that whoever was responsible for contacting County Executive Budish would be "dealt with". He took this to mean that retaliation by Sheriff Pinkney would be forthcoming.

**31.** On February 12, 2016 one of the two sheriff's deputies who had pursued a private investigation of Sgt. Lisy forwarded a public record's request to the County seeking Sgt. Lisy's complete personnel file including his job application. Sgt. Lisy's chain of command notified him on February 16, 2016. Again, the Defendants took no action against the two deputies, again fostering and condoning inappropriate and illegal conduct and harassment toward Sgt. Lisy in the workplace.

**32.** On February 16, 2016 Lt. Smith was ordered by Capt. Peters to review an evaluation of Melissa Harris, a subordinate of Sgt. Lisy and friend of Sheriff Pinkney, conducted by Sgt. Lisy because his ratings of her ratings were "too low". Cpt. Peters ordered Lt. Smith, Sgt. Schilling and Sgt. Lisy to rewrite the evaluation, but they refused as the evaluation was an accurate representation of Deputy Harris's performance.

**33.** On February 17, 2016 Cpt. Peters ordered Sgt. Lisy to his office and advised Sgt. Lisy that despite his confidence in him as a supervisor he did not agree with the evaluation of Deputy Harris and that he would rewrite the evaluation and Deputy Harris would be reassigned to another supervisor. Sgt. Lisy inquired as to how the deficiencies in Deputy Harris' work would be handled. Cpt. Peters told him that it was not his concern. He told Sgt. Lisy that that is "the way things are", "despite how they are supposed to be" and that he needed to "learn how to navigate in the current climate". Sgt. Lisy contends that Sheriff Pinkney ordered the rewrite of the evaluation in an effort to discredit and undermine Sgt. Lisy's ability to supervise his direct reports.

**34.** On February 18, 2016 Sgt. Lisy was informed that he was being removed from the UDF team. His removal left less experienced Sergeants and Deputies with less

experience, training than he, and who had not engaged in protected activity as members of the UDF team. This was a further act of discrimination and retaliation ordered by Sheriff Pinkney

**35.** On February 23, 2016 Sgt. Lisy was told by his supervisor Lt. Smith that Sheriff Pinkney stated, in a staff meeting, that he would be removed from the Detective Bureau. According to Lt. Smith, Sheriff Pinkney said it was a "business decision" and that if those who were affected did not like it, "it's too bad, so sad." Later that day, Cpt. Peters told Sgt. Lisy that "Rocky River Dispatch is hiring." Sgt. Lisy asked Cpt. Peters if he should be looking for another job. Cpt. Peters replied, "I don't know, maybe". Cpt. Peters then stated that he had done everything that he could for him and asked when Sgt. Lisy would be leaving the Detective Bureau. Cpt. Peters told him he would do everything in his power to "bring him back once the storm passes."

**36.** On March 1, 2016 Lt. Smith again informed Sgt. Lisy that it was likely that he would be removed as a supervisor in the Detective Bureau and that per Sheriff Pinkney, disciplinary investigations for Sgt. Lisy would likely ensue.

**37.** In March and April 2016 Sgt. Lisy was advised by another then Sgt. Sharpe that certain Sheriff's Deputies were spreading rumors that Sgt. Lisy had engaged in improprieties in the use of travel funds while he was on the UDF team. Sgt. Lisy was told that Sheriff Pinkney had commissioned Fiscal Officer Donna Kaleal to investigate the appropriation of funds relative to the travel training. The rumors were leaked to a local news station. Sgt. Lisy asked Cpt. Peters if he knew of an investigation into Sgt. Lisy's conduct, and he responded he did not, but that Sheriff Pinkney may know.

**38.** On March 15, 2016 Sgt. Lisy's take home, work vehicle was ordered returned by Sheriff Clifford Pinkney. The result was that Sgt. Lisy's personal vehicle was damaged while parked in the Sheriff's garage; an investigation into which failed to result in any parties being held responsible for the same.

**39.** On April 11, 2016 Sgt. Lisy received a telephone call from a local news station investigative reporter who inquired about the UDF team travel training investigation; he related that he was informed that two sergeants and a lieutenant were removed from the UDF team because of an investigation into expenditures on a UDF team trip.

**40.** On April 29, 2016 Sgt. Lisy learned that Sheriff's Deputies were again showing a court sealed, 1994 booking photo of Sgt. Lisy around the Department.

**41.** On May 10, 2016 Sgt. Lisy received notice that a Lieutenant's exam was being given on June 26, 2016. This was three months before he was eligible to take the examination. There had been two unfilled lieutenant positions for the past two years which constituted a violation of the Collective Bargaining Agreement. Sgt. Lisy sent a written request to the Human Resources Department that he be permitted to take the exam. He received no reply.

**42.** Sgt. Lisy contends the date for the examination was chosen so that he would not be eligible to take the examination. In fact, the promotion of two lieutenants from that list happened less than seventeen days before Sgt. Lisy was eligible for promotion. Sgt. Lisy contends the date for the Lieutenant's examination was chosen so that he would not be eligible to take the examination.

**43.** On May 14, 2016 Cuyahoga County Human Resources Department notified Sgt. Lisy that after investigation of his latest complaint of a hostile work environment there was

insufficient evidence to conclude that Sheriff Pinkney had violated Sgt. Lisy's rights.

**44.** On June 16, 2016 Sgt. Lisy forwarded a charge of discrimination to the U.S. Equal Employment Opportunity Commission alleging discrimination on account of his race/color and retaliation for having engaged in protected activity. A true copy is attached as Exhibit A.

**45.** On September 21, 2016 Lt. Smith advised Sgt. Lisy that in a staff meeting Cpt. Gerome, Sgt. Lisy's new supervisor, intended to remove Sgt. Lisy from the Detective Bureau because he did not trust him and that Cpt. Gerome believed that he would suffer fallout from any ongoing litigation by Sgt. Lisy involving his claims of retaliation and hostile work environment. Lt. Caraballo who was replacing Lt. Smith as Sgt. Lisy's direct supervisor, advised Cpt. Gerome to leave well enough alone unless he wanted to be wrapped up in the lawsuit. At that point Cpt. Gerome acquiesced and stated the Sgt. Lisy was the most experienced and best qualified Sgt. to run the Detective Bureau.

**46.** On December 28, 2016 Sgt. Lisy was assigned to research training for Cuyahoga County Sheriff's Department Dispatchers. He found training that would allow him to become an instructor/trainer so he could then certify the dispatchers. He was denied this training as well as other requests for training which were ignored or denied.

**47.** On January 30, 2017 Sgt. Lisy was advised that when the new sergeants were promoted there would be a shake-up of the current sergeants who would be reassigned.

**48.** On February 2, 2017 Sgt. Lisy had a conversation with a subordinate detective who stated that many of the deputies in the Detective Bureau had lost respect for him

because they have seen how his power and ability to lead has been stripped since he began pursuing the retaliation and hostile work environment claims.

**49.** On February 8, 2017 Cuyahoga County Fiscal Officer Donna Kaleal asked Lt. Caraballo if Sgt. Lisy was going to be moving forward with a complaint against Sheriff Pinkney.

**50.** On February 9, 2017 Sgt. Lisy learned that after he made his initial complaint of a discrimination and hostile work environment in 2014, then Chief Deputy Pinkney stated "I told Lisy not to file the complaint . . . that mother f****r" is out of control."

**51.** On March 9, 2017 Sgt. Lisy was informed that he was being transferred from the Detective Bureau to the Juvenile Justice Center effective April 2, 2017. The Juvenile Justice Center assignment is historically known as a punishment post.

**52.** On March 13, 2017 Sgt. Lisy met with Chief Deputy George Taylor to discuss the transfer. Chief Taylor stated that all sergeants had been moved in order to get everyone more experience. Sgt. Lisy reminded him that two sergeants were not transferred. He replied that they were needed at their posts. Chief Taylor stated that the captains had input as to the changes; but both captains informed Sgt. Lisy that they had no input in the process. In fact, Cpt. Gerome confirmed that the list was "pre-populated" specifically with Sgt. Lisy being moved to Juvenile Justice Center.

**53.** On March 24, 2017 Sgt. Lisy was moving some of his office materials to the Juvenile Justice Center. He was approached by a coworker who told him that Deputies recently were passing his sealed booking photograph from 1994 around the Juvenile Justice Center. Sgt. Lisy immediately reported the incident to his new supervisor Lt. Rivera. Sgt. Lisy informed Lt. Rivera that he had previously reported this conduct to

HR.

**54.** On April 19, 2017 Sgt. Lisy again emailed County Executive Armond Budish seeking review of his complaints of discrimination, hostile work environment and retaliation.

**55.** On May 22, 2017 he contacted Cuyahoga County HR about his complaints and re-opening the investigation.

**56.** On May 25, 2017 he met with the HR manager at the Cuyahoga County HR office to discuss his complaints. He later provided the representative a list of witnesses with an explanation of the information they may have and their involvement. He was assured there would be a thorough investigation; however, none of the witnesses were interviewed.

**57.** On August 21, 2017 Sgt. Lisy received a text message from a retired Deputy that stated "Lisy has declared a jihad against the dep." Sgt. Lisy reported the incident to Chief Frank Bova, Chief Deputy George Taylor, Cpt. Richard Peters, and Lt. Nestor Rivera.

**58.** On October 17, 2017 Sgt. Lisy was interviewed by HR Investigator Flores and HR Manager Michael Brown about a retaliatory complaint filed by Deputy Melissa Harris. He was also asked about his complaints, but he informed Mr. Brown he was represented by counsel.

**59.** On January 12, 2018 Mr. Lisy asked HR Manager Brown about the status of his investigation of Sgt. Lisy's complaints. Mr. Brown informed him that three of the complaints were unsubstantiated and that he was still investigating the hostile work environment claim.

**60.** On January 12, 2018 Sgt. Lisy learned that the Department promoted six new sergeants, who were assigned to supervise far more desirable posts than the Juvenile Justice Center, thereby leaving him in that post.

**61.** On January 12, 2018 the Cuyahoga County Human Resources Department determined that upon additional consideration after reopening Sgt. Lisy's complaints, the complaints were unsubstantiated.

**62.** On February 15, 2018 the US EEOC issued Dismissal and Notice of Rights. I contend the investigation was insufficient and failed to take into account the full nature and extent of the retaliation I was and have been subjected to.

**63.** Defendants have failed and refused to take any prompt remedial action as to any of Sgt. Lisy's complaints and the discriminatory and retaliatory treatment continues.

**64.** Further, Defendants' failure to take prompt remedial action in response to his complaints of disparate treatment and retaliation has motivated and/or resulted in coworkers engaging in unwarranted, discriminatory, and retaliatory conduct, inquiries and investigations regarding his employment and personal history; all in an effort to undermine his authority and to discredit him in his employment and in further retaliation for his engagement in protected activity. Defendants knew of and/or directly participated in this activity and/or have failed to take appropriate action to address the retaliatory actions of his coworkers and subordinates.

**65.** Defendants' failure to take any action with regard to the actions of coworkers demonstrates that Defendants, by acts or omissions, fostered and condoned the retaliatory conduct.

**66.** Defendants' discriminatory and retaliatory conduct toward Sgt. Lisy has created,

fostered and condoned a hostile work environment and has and continues to cause him concern as to his ability to maintain his career with Defendant and also as to his safety in the workplace.

**67.** Sgt. Lisy timely filed a charge of discrimination against Defendants with the United States Equal Employment Opportunity Commission ("EEOC"); said charge is attached hereto, and incorporated by reference herein, as Plaintiff's Exhibit "A" ("PXA").

**68.** The EEOC conducted an investigation, was unable to conclude whether there was or was not a violation of statutes and issued a Notice of Suit Rights on February 15, 2018. A copy of said notice is attached hereto as Plaintiff''s Exhibit "B" ("PXB") is hereby fully incorporated by reference herein.

**69.** PXA and PXB establish that all conditions precedent to this action under Title VII have been met.

**70.** By reason of the foregoing acts and omissions of race and/or color perpetrated, fostered and condoned by the Defendants in violation of Title VII, Sgt. Lisy has been damaged in said sums of Back and Front Pay and Compensatory and Punitive Damages, plus reasonable attorneys' and experts' fees and costs under 42 U.S.C. §1988.

**Count II (Title VII Retaliation)**

**71.** All foregoing relevant material and pertinent averments are reiterated and incorporated herein by reference.

**72.** By reason of the foregoing acts and omissions of retaliation by the Defendants against Sgt. Lisy on account of his engagement in activity protected under Title VII

as well as the hostile work environment created by said retaliation all in violation of Title VII, Sgt. Lisy has been damaged in said sums of Back and Front Pay and Compensatory and Punitive Damages, plus reasonable attorneys' and experts' fees and costs under 42 U.S.C. §1988.

**Count III (Ohio Civil Rights Act Violations)**

**73.** All foregoing relevant material and pertinent averments are reiterated and incorporated herein by reference.

**74.** Defendants were at all times relevant hereto were and are employers within the meaning of the Ohio Civil Rights Act ("OCRA"), Chapter 4112, Ohio Revised Code ("R.C."), and specifically R.C. 4112.01(A)(2) of the OCRA.

**75.** Defendants engaged in patterns or practices of employment discrimination and retaliation, all in violation of O.R.C. 4112.02(A) and R.C. 4112.02(I) of the OCRA, and the provisions of the Ohio Administrative Code ("OAC") promulgated thereunder against Sgt. Lisy.

**76.** Defendants' actions constitute continuing and ongoing race / color based discrimination and retaliation for Sgt. Lisy having engaged in activity protected under R.C. 4112.02(I).

**77.** The discriminatory and retaliatory practices of Defendants fostered and condoned a race / color based and retaliation based hostile work environment.

**78.** By reason of the foregoing acts and omissions of retaliation against Sgt. Lisy on account of his engagement in activity protected the OCRA and OAC, in particular O.R.C. §4112.02(I), Plaintiff has suffered damages in indeterminate sums to be proven at trial in terms of: loss of salary or wages plus value of fringe benefits to date

of trial ("Back Pay") and thereafter ("Front Pay"); mental anguish and emotional distress, humiliation and disparagement of reputation, and general loss of enjoyment of life, all warranting further or general compensation ("Compensatory Damages"); and punitive or exemplary damages ("Punitive Damages"), which ought to be awarded by reason of the deliberate, intentional, willful, wanton, malicious and/or reckless violations of the OCRA and OAC by the Defendants.

WHEREFORE, Plaintiff demands:

**A.** Trial by jury on all Counts and issues of law, followed by bench trial to the Court on remaining issues of equity, if any;

**B.** Judgment for Plaintiff and against the Defendants on Counts I and II for said sums of Back and Front Pay and Compensatory and/or reasonable attorneys' and expert witness' fees and costs under 42 U.S.C. §1988, as to Plaintiff's Title VII claims;

**C.** Judgment for pre-judgment interest on any and all damage awards, plus costs; and

**D.** Such other and further relief and redress as is just and equitable under the circumstances

Respectfully submitted,

__s/ John F. Myers___________

John F. Myers #0032779
275 North Portage Path #3C
Akron, Ohio 44303
330-819-3695
330-535-0850
johnmyerscolpa@gmail.com
Attorney for Plaintiff